**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| ERIC WESTRY,<br><br>  *Plaintiff*,<br><br>  v.<br><br>MAUREEN DUGGAN, JESSICA PERRY, CHARLOTTE SHEA, ZOE STOUT, JEANETTE JOHNSON, JANE DOE/STEPHANIE DOE, ERIN MAHONEY, JILL KENWORTHY, DEANNA LEVINE, BRYONNA GEISTE, KERRY LINDEN,<br><br>  *Defendants*. | No. 3:22-cv-00685-MPS |

## <u>RULING ON DEFENDANTS' MOTIONS TO DISMISS</u>

Eric Westry brings this *pro se* action against employees of the Connecticut Department of Children and Families ("DCF Employees), Assistant Attorneys General for the Connecticut Office of the Attorney General ("Assistant AGs"), and Kerry Linden, a therapist. All Defendants have been sued in their individual capacity. Westry alleges that the Defendants deprived him of his parental and custodial rights in violation of the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the U.S. Constitution, as well as the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d *et seq*. The Court also construes Westry's complaint as bringing Connecticut state-law claims of both negligent and intentional infliction of emotional distress. Kerry Linden has moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). ECF No. 93. The DCF Employees and Assistant AGs have moved to dismiss the action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 90.

## I.    BACKGROUND

### A. Factual Allegations

The complaint identifies the Defendants as "employees of the State of Connecticut." ECF No. 87 at (A)(4). But other than alleging that Defendant Jill Kenworthy was a "former DCF and believed as current Judicial employee," *id.* at (B)(1)(d), the complaint does not identify the agencies these individuals worked for or the titles they bore. The motion to dismiss filed by the DCF Employees and Assistant AGs nevertheless states that: (1) Maureen Duggan is the former DCF Legal Director; (2) Zoe Stout is the current DCF Legal Director; (3) Charlotte Shea is the DCF Assistant Legal Director; (4) Erin Mahoney is a DCF Program Supervisor; (5) Jessica Perry is a DCF social worker; (6) Bryonna Geiste is a DCF social worker; (7) Jeanette Johnson is an Assistant AG; and (8) Deanna Levine is an Assistant AG.[1] ECF No. 90-1 at 2 nn. 1 & 2. Finally, the complaint describes Kerry Linden as "contracted with the state," ECF No. 87 at (A)(4), and a "therapist." *Id.* at (B)(2).

Westry's complaint is difficult to follow and appears to assume prior knowledge about his long-standing dispute with DCF that the Court lacks. Though it is replete with rhetoric, it pleads very few facts. As far as I can tell, the present action concerns a long-running child-custody dispute between Westry and his ex-wife that originated in the Connecticut state courts. The alleged conduct appears to have occurred between 2016 and 2021. In general, Westry alleges that the DCF employees, Assistant AGs, and Linden acted jointly and individually to deprive him of custody of his daughter while at the same time ignoring evidence that she was being abused and forcing her to abandon her African name. According to Westry, these actions were taken in retaliation for a 2016 discrimination complaint he filed against the DCF "for government malfeasance." *Id.* at

---

[1] The role served by Jill Kenworthy remains unclear, but the motion states that Kenworthy is a DCF employee. ECF No. 90-1 at 2 n.2.

(B)(1)(b). As a result of these actions, Westry alleges he suffered severe emotional distress, *see, e.g.*, *id*. at (B)(1)(g), and that his rights under state and federal law and the U.S. Constitution were violated. The claims and allegations as to each Defendant, as best I can discern them, are set forth below.

*Claims*

  Westry claims that his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendment (including his rights to equal protection, procedural due process, and substantive due process) were violated.[2] He also alleges that Linden, in particular, violated the requirements set forth in the Health Insurance Portability and Accountability Act ("HIPAA").[3] 42 U.S.C. §§ 1320d *et seq*. Finally, because Westry alleges that he has suffered "severe emotional distress" as a result of the Defendants' conduct, *see, e.g.*, ECF No. 87 at (B)(1)(m), the Court construes Westry's complaint as also containing state-law tort claims for intentional and negligent infliction of emotional distress. *See Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) ("Rule 8's liberal pleading principles do not permit dismissal for failure in a complaint to cite a statute, or to cite the correct one . . . . Factual allegations alone are what matters.") (internal quotations omitted). Outside the allegations against Linden and the dispute concerning his daughter's name—by which,

---

[2] The complaint reads: "The outsized effort and intensity to ruin a Black man, engaged in a protective activity, standing his ground for his child's/family well-being is a violation of the plaintiff's Fourteenth Amendment Equal Protection and Fifth (inclusively, First) Amendments procedural and substantive due process rights secured under the Constitution of the United States." ECF No. 87 at (B)(1)(a); "[T]he defendants subjected the plaintiff to an unprecedented pattern of abuse, causing irreparable, permanent, residential, financial, physical, reputation[*sic*] damage and emotional distress in violation of the Fourth Amendment to the United States Constitution as enforced by Sections 1983 and 1988 of Title 42 of the United States Code.[*sic*] and First, Fourteenth Amendments Equal Protection, Due Process, Eighth and Fifth Amendments cruel and unusual punishments, of procedural and substantive due process rights secured under the Constitution of the United States relative to disparate treatment." ECF No. 87 at (B)(19)(g).

[3] The complaint reads, "She . . . failed to follow [the] Health Insurance Portability and Accountability Act of 1996 (HIPPA)[*sic*] . . . ." ECF No. 87 at (B)(2).

liberally construed, he appears to allege a violation of his First Amendment rights[4]—the complaint does not attempt to tether particular factual allegations to particular claims. Nevertheless, because I must construe the complaint to raise the strongest arguments it suggests, it falls upon the Court to determine whether a particular factual allegation, or set of allegations, adequately support one of the many claims asserted. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

## *Maureen Duggan, Former DCF Legal Director*

Westry alleges that following the dismissal of criminal charges against him, Maureen Duggan ignored DCF policy under Regulations of Connecticut State Agencies §§ 17a-101k-3 and 17a-101k-8(j), apparently in connection with placing Westry's name on the Child Abuse and Neglect Registry.[5] ECF 87 at (B)(1)(a). He also alleges that Duggan "ignor[ed] court orders" and "commit[ed] subornation of and commission of perjury, in false statements to the court in the face of confirmatory evidence." *Id.* at (B)(1)(b). Finally, Westry alleges that Duggan "caused [him] intense emotional distress for 64 days of loss custody in 2021" and that she was complicit "in a 632 day separation . . . from his ONLY child age 13 months until almost three years old 2016-2017." *Id.* at (B)(1)(e) (emphasis in original).

---

[4] The complaint reads, "All defendants have committed civil rights violations, attempting to omit the African name and rename the plaintiff's daughter . . . causing First Amendment violations to her and *the family* . . . ."ECF No. 87 at (B)(1)(j) (emphasis added). Because Westry is a member of "the family," the Court reads this portion of the complaint to allege a violation of Westry's First Amendment rights and not just his daughter's.

[5] Regulation of Connecticut State Agencies § 17a-101k-3 sets forth the criteria for placing an individual's name on the Child Abuse and Neglect Registry, which is the "confidential data file maintained as part of the department's computerized database, of persons who have been substantiated as individuals responsible for an act or acts of child abuse or neglect and for whom the commissioner has made a determination, based upon a standard of reasonable cause, that the individual poses a risk to the health, safety or well-being of children . . . ." Conn. Agencies Reg. § 17a-101k-1(14). And Regulation of Connecticut State Agencies § 17a-101k-8 pertains to the conduct of administrative hearings held for those who seek review of a DCF decision to place their name on the registry. Section 17a-101k-8(j) reads, "[i]n an administrative hearing, the burden of proof shall be on the department to prove by a fair preponderance of the evidence submitted at the hearing that (1) the allegations of at least one substantiation; and (2) if applicable, the registry finding, was based on the proper application of the criteria set forth in section 17a-101k-3 of the Regulations of Connecticut State Agencies." Conn. Agencies Reg. § 17a-101k-8(j).

*Jessica Perry, DCF Social Worker*

A substantial portion of the allegations are directed against Jessica Perry. Westry alleges that Perry: "undermine[d]" his "court ordered parenting time," *id.* at (B)(1)(c); "conspired with the police" in drafting sworn statements intended to "place an ignominious stigma on [his] reputation and mental status," *id.*; "instruct[ed] his minor child's mother and ex-wife to unscrupulously and illegally seek sole custody of their minor child," *id.*; "ignor[ed] [his] conveyance of probative, dispositive evidence of the mother assaulting the child," *id.*; "turned a blind eye" to other abusive behavior, *id.* at (B)(1)(c)-(d); ignored a judge's order to remove a dangerous dog from the home, *id.* at (B)(1)(d); attempted to "corrupt judicial employees . . . to lie saying [he] is insane," *id.*; "turned a complaint by [him] . . . into a false politically motivated attack against [him]," *id.*; "caused [him] intense emotional distress for 64 days of loss custody in 2021" and "an additional 21 days in SEPTEMBER 2020," *id.* at (B)(1)(e) (emphasis in original); directed Maria Westry, Westry's ex-wife, to ignore a court order expanding Westry's parenting time, *id.* at (B)(1)(f); "fraudulently claimed [his] daughter was in [im]minent danger," *id.* at (B)(1)(g); "fraudulently submitted falsehoods for the filing of a juvenile petition . . . to shop around for a court that would rubber stamp their wrong-headed cause," *id.* at (B)(1)(i); and violated a court order by "publish[ing] a claim that [he] has a criminal record . . . ." *Id.* at (B)(1)(k).

*Charlotte Shea, DCF Assistant Legal Director*

Westry alleges that Charlotte Shea's "actions resulted in [his] name remaining on the [child abuse and neglect] registry for nearly half a year since 9 OCTOBER 2018 (placed two years prior)." *Id.* at (B)(1)(a) (emphasis in original). He also alleges that Shea ignored DCF policy "to dispose of the case in accordance with a potential court dismissal," "ignor[ed] court orders," and

"commit[ed] subornation of and commission of perjury, in false statements to the court in the face of confirmatory evidence." *Id*. at (B)(1)(a)-(b).

### *Zoe Stout, Current DCF Legal Director*

Westry alleges that, like Duggan and Shea, Zoe Stout ignored DCF policy "to dispose of the case in accordance with a potential court dismissal," "ignor[ed] court orders," and "commit[ed] subornation of and commission of perjury, in false statements to the court in the face of confirmatory evidence." *Id.*

### *Jeanette Johnson, Assistant AG*

Westry alleges that Jeanette Johnson "commit[ed] subornation of and commission of perjury, in false statements to the court in the face of confirmatory evidence," *id*. at (B)(1)(b), and that she "criminally and civilly" violated Rule 8.4 of the Connecticut Rules of Professional Conduct. *Id*. at (B)(14). He also alleges that Johnson failed to stop the "irreparable and permanent" harm he suffered from his placement on the Child Abuse and Neglect Registry. *Id*. at (B)(1)(a).

### *Erin Mahoney, DCF Program Supervisor*

Westry alleges that Erin Mahoney caused him "intense emotional distress for 64 days loss of custody in 2021," *id.* at (B)(1)(e), violated a court order by "publish[ing] a claim that [he] has a criminal record," *id*. at (B)(1)(k), and facilitated an effort led by Jessica Perry to falsely portray him as a danger to children. *Id.* at (B)(1)(m).

### *Jill Kenworthy, DCF Employee*

Westry's allegations against Jill Kenworthy are identical to those asserted against Erin Mahoney.

*Deanna Levine, Assistant AG*

Westry asserts the same allegations against Deanna Levine that he asserts against Erin Mahoney and Jill Kenworthy. He further alleges that Levine, like Johnson, violated Rule 8.4 of the Connecticut Rules of Professional Conduct. *Id.* at (B)(14).

*Bryonna Geiste, DCF Social Worker*

Westry alleges that Bryonna Geiste "directed [his] ex-wife to violate [his] custody rights on 23 JULY 2021." *Id.* at (B)(1)(g) (emphasis in original). He also alleges that Geiste, as a "participant[] in renaming [his] daughter [and] deleting her LEGAL AFRICAN NAME," caused him severe emotional distress. *Id.* at (B)(1)(m) (emphasis in original). Finally, he alleges that Geiste ignored reports of his "daughter's injuries from over 9 dog attacks," *id.*, and he implicates Geiste in Jessica Perry's alleged effort to falsely portray him as a danger to children. *Id.*

*Kerry Linden, Therapist*

Westry alleges that Kerry Linden, "attempted to coerce [his] minor daughter into false statements of harm to unsuccessfully deny [him] custody," *id.* at (B)(2), "refus[ed] to identify herself to a co-parent with custody," *id.*, "failed to comply with ethical standards" by failing to "connect[ ] with the child's real and ethical therapist who also sees [him] and aforementioned child for separate individual counseling," *id.*, and failed to provide him with documents, as required by HIPAA. *Id.* at (B)(9).

**B. Procedural History**

On May 20, 2022, Westry filed this lawsuit, in part, under 42 U.S.C. § 1983. ECF No. 1 ¶ 2. He also invoked this Court's supplemental jurisdiction by alleging a deprivation of his rights under state law. *Id.* at ¶ 1. The suit was brought against the present Defendants (minus Geiste) and a number of other state actors in their official and individual capacities. On September 14, 2022,

U.S. Magistrate Judge Robert Richardson filed a recommended ruling proposing the dismissal, in part, of claims against the State of Connecticut and its executive agencies as well as claims made under Article 1 § 20 of the Connecticut State Constitution. ECF No. 9 at 40. On September 28, 2022, before I could decide whether to adopt Judge Richardson's recommended ruling, Westry filed an amended complaint terminating a number of defendants, eliminating the state constitutional claims, and suing the remaining defendants only in their individual capacities. ECF No. 10. On January 26, 2024, Westry was permitted to file a second amended complaint, ECF No. 18, this time naming "Kerry Doe" as a defendant, and on May 30, 2024, Westry was given permission to file a third amended complaint dropping "Kerry Doe" and adding "Kerry Linden" as a defendant. ECF No. 44. On September 19, 2024, the Court granted Westry a final opportunity to amend his complaint.  ECF No. 86. And Westry did so on October 4, 2024. ECF No. 87. This fourth amended complaint, the operative complaint, added additional arguments concerning Linden's status as a state actor. *See id.* at (B)(3)-(5). On October 17, 2024, the Defendants moved to dismiss the complaint. ECF Nos. 90 and 93. Kerry Linden moved to dismiss the complaint under Rule 12(b)(6), and the DCF Employees and Assistant AGs moved to dismiss the complaint under Rule 12(b)(6) and 12(b)(1).

## II.    LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-

moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In adjudicating a motion to dismiss under Rule 12(b)(1) on the pleadings, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor" except for "argumentative inferences favorable to the party asserting jurisdiction." *Buday v. New York Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012).

## III.    DISCUSSION

### A.  Legal Conclusions

Before addressing the allegations and claims directed toward particular Defendants, I must first address a class of allegations that are legally insufficient. In particular, I must address the complaint's numerous conclusory allegations. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). And while this Court "remains obligated to construe *pro se* complaints liberally," *Mohammad v. New York State Higher Educ. Services Corp.*, 422 Fed. App'x 61, 62 (2d Cir. 2011), it is nevertheless inescapable that many of Westry's allegations are legal conclusions. For example, Westry's allegation that Duggan, Shea, Stout and Johnson "commit[ed] subornation of and commission of perjury, in false statements to the court" is undoubtedly a legal conclusion the Court need not

accept as true. *See Semple v. Eyeblaster, Inc.*, No. 08-cv-9004 (HB), 2009 WL 1457163, at *5 n.5 (S.D.N.Y. May 26, 2009) ("[T]he Court need not accept [the] allegation as true, as it is merely a conclusory allegation or legal conclusion masquerading as a factual conclusion.") (internal quotations omitted). The Court acknowledges that, in support of this allegation, Westry does cite a "communication from Nancy Pugliese, J.D." ECF No. 87 at (B)(1)(b). But citing a communication not in the record gives the Court no factual basis to infer that perjury, or subornation of perjury, was committed.[6] And Westry pleads no additional facts to suggest that it was.

The allegation that Perry and Geiste "directed [Westry's] ex-wife to violate [his] custody rights" is likewise conclusory. As are the allegations that Perry "conspir[ed] with the police" and "turned a complaint by [Westry] . . . against the mother into a false politically motivated attack against [Westry]" and that Johnson and Levine "criminally and civilly violated professional codes of conduct." "Such [] threadbare recital[s] of legal claims cannot stand in for the specific factual allegations required to support a claim against a particular set of defendants." *Lusmat v. Papoosha*, No. 3:20-cv-01386-SALM, 2022 WL 2342909, at *1 (D. Conn. June 29, 2022). To the extent that Westry is attempting to state a claim through these allegations, without more facts, he has failed to do so.

### B.  Claims Against the Defendants

*Stephanie Doe*

Stephanie Doe is only briefly mentioned in the complaint. Westry alleges that Doe (along with Geiste) changed his daughter's name, ignored reports of his daughter's injuries, and falsely

---

[6] In any event, perjury is a violation of the criminal law that does not create a basis for a private party to bring a civil claim. *Rzayeva v. U.S.*, 492 F. Supp. 2d 60, 84 (D. Conn. 2007) ("As this Court previously held . . . private citizens do not have a private cause of action for criminal violations.").

portrayed him as a danger to children. But I must dismiss any claims against Doe because Westry has never filed proof of service on Doe with the Court. "If a defendant is not served within 90 days after the complaint is filed," Federal Rule of Civil Procedure 4(m) requires that the Court "dismiss the action without prejudice against the defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). The Court has already provided Westry with additional time to effectuate service. ECF No. 20. Because *well over a year* has passed since January 11, 2024—the date Stephanie Doe was added to the complaint—the Court DISMISSES the action against Stephanie Doe without prejudice. Westry himself concedes this is proper. *See* ECF No. 44 at 2 (*"*STEPHANIE DOE was not discoverable and therefore not served and should be removed from the defendant caption, dismissed WITHOUT prejudice.") (emphasis in original).

<u>Jeanette Johnson and Deanna Levine</u>

"[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [Section] 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Absence of absolute immunity for actions taken under a prosecutor's adversarial capacity (as opposed to their investigative capacity) "would prevent the vigorous and fearless performance of the prosecutor's duty . . . ." *Id.* at 427. Under state law, Johnson and Levine, as Assistant AGs, served as advocates for the State in a civil, rather than criminal, capacity. *See* CONN. GEN. STAT. § 3-125 ("The Attorney General shall have general supervision over all legal matters in which the state is an interested party, *except those legal matters over which prosecuting officers have direction*.") (emphasis added). However, like other forms of immunity, prosecutorial immunity is based on function, not form. *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996). Civil advocates are entitled to prosecutorial immunity when they perform functions analogous to those of the prosecutor in the courtroom setting. *See Butz v. Economou*, 438 U.S. 478, 515 (1978) ("We also

believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to those acts."). Those functions include "the decision to initiate administrative proceedings against an individual," *id.*, and "presenting evidence on the record to the trier of fact." *Id.* As a matter of policy, this immunity is extended to state litigators in the civil setting, in part, because of "the risk that a losing civil defendant will seek to retaliate by a suit attacking the propriety of the government attorney's conduct . . . ." *Barret v. U.S.*, 798 F.2d 565, 572 (2d Cir. 1986). Importantly, *Barrett* also holds that absolute immunity is extended to litigators who *defend* the State. *See id.* ("Although government defense counsel, not having selected the other party as the target of litigation, is in a more passive position than a prosecutor or plaintiff's representative, he nevertheless functions in an adversarial arena . . . and since he is charged with a public trust he should not be inhibited in the faithful performance of his duties by the threat of harassing lawsuits against him. His function as a government advocate therefore entitles him to absolute immunity . . . .").

The non-conclusory allegation brought against Johnson is that she failed to stop Westry's placement on the Child Abuse and Neglect Registry. The process for placing a name on the registry is two-pronged—involving both an investigatory and adjudicatory phase. After a report of child abuse or neglect is received by the State, the DCF Commissioner investigates the report. CONN. GEN. STAT. § 17a-101g(a). If the Commissioner finds that the evidence substantiates a claim of abuse or neglect, he or she then "make[s] a determination that . . . the name of the individual responsible should be listed on the central registry . . . ." CONN. AGENCIES REGS. § 17a-101k-3(a). The individual to be listed then has several opportunities to petition for review. He or she may first request an internal review of the Commissioner's determination. *Id.* at § 17a-101k-4. If the determination is sustained upon review, he or she may then request an administrative hearing. *Id.*

at § 17a-101k-6. Finally, if unsuccessful at the hearing, he or she may request reconsideration or appeal the decision to the Connecticut Superior Court. *Id.* at § 17a-101k-11.

Whether or not Johnson is immune for her alleged involvement in Westry's placement on the registry depends upon *where* in the above procedural schema she became involved. If she was involved in the investigatory phase, prosecutorial immunity would not apply. If she was involved in representing the state in either an administrative hearing or judicial review, however, she would be immune. The complaint does not allege the nature of her involvement. And I must draw all reasonable inferences in favor of Westry. But the inference that an Assistant AG would be involved in a routine DCF investigation, as opposed to representing the DCF in an administrative hearing or before the Superior Court, is not a reasonable one. Instead, the only reasonable inference to draw is that Johnson "participated" in Westry's name being placed on the registry by defending DCF's determination in a hearing or courtroom setting. Under *Barrett*, Johnson is immune from suit for such conduct. The complaint as to Johnson is therefore DISMISSED with prejudice.

The non-conclusory allegations brought against Levine are that she: 1) supported Jessica Perry in her efforts to portray Westry as a danger to children "in their perverse juvenile case," ECF No. 87 at (B)(1)(m); and 2) published a claim that Westry has a criminal record. As to the first allegation, it plainly alludes to representations made before a court and is therefore conduct that is protected by prosecutorial immunity. As to the second allegation, it's unclear when and in what context Levine (and others) published this claim. But whether this alleged action was taken in Levine's investigatory or adjudicatory capacity, the allegation nevertheless fails to sufficiently state a claim. The allegation reads, "Deanna Levine . . . published a claim that the plaintiff has a criminal record in New York in violation of Hon. Gilbert C. Hong's orders." *Id.* at (B)(1)(k). Westry does not allege, however, that the claim that he had a criminal record was false and, without

such an allegation, I can discern no federal claim on the basis of this alleged conduct. First, while the fact that the claim allegedly violated a judge's order might be a basis for a contempt motion brought before that judge, it does not ground any federal cause of action.

Second, Westry cannot make out a so-called "stigma-plus" due process claim on the basis of this conduct because he does not allege that Levine published a false claim. A "person's interest in his or her good reputation alone . . . is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 329-30 (2d Cir. 2004). Instead, to state a due process claim based on reputational harm, a plaintiff must allege that he or she suffered "stigma plus" some form of tangible harm. *Id.* Specifically, "[t]o establish a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, *and that he or she claims is false*, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (internal quotations omitted) (emphasis added). Without alleging that the claim of his criminal record was false, Westry has failed to state a stigma-plus claim. Accordingly, on the basis of both prosecutorial immunity and Westry's failure to state a claim against Levine, I DISMISS all claims against Levine with prejudice.[7]

---

[7] I reject the Defendants' argument that claims against the other state employees "are really brought against them in their official capacity" such that they are also immune from suit under the 11th Amendment. In support of that argument, the Defendants cite *Spring v. Constantino*, 168 Conn. 563, 568 (1975). *Constantino* is a Connecticut Supreme Court case. It is a case about common-law sovereign immunity that does not govern a federal court's determination of whether immunity under the Eleventh Amendment of the *United States* Constitution applies for alleged violations of *federal* law. I do not "second guess" Westry's representation that he is suing the Defendants in their individual capacities. Section 1983 provides an express cause of action against those acting under color of state law, and litigants can, and routinely do, sue those acting under color of state law in their individual capacities, even when the allegations suggest that the defendants were carrying out their duties.

*Kerry Linden*

Westry brings his suit under 42 U.S.C. § 1983, a federal statute that allows persons acting "under color of" state law to be sued for violations of rights secured by the Constitution or laws of the United States. To act "under color of" state law, one must be a state actor, and so state action is a core element of any Section 1983 claim. *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir. 1975) ("A private party violates 42 U.S.C. [Section] 1983 only to the extent its conduct involves state action."). Westry alleges that Linden was "contracted with the State of Connecticut." Linden argues that Westry has nevertheless failed to allege that Linden is a state actor. ECF No. 94 at 8. I agree with Linden.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotations omitted). In *West*, a case Westry cites, the Supreme Court held that a prison doctor contracted by the State was a state actor for purposes of Section 1983. The Court's holding was based in part on the determination that the physician was the only provider "to whom the inmate [could] turn" for treatment and that the State had a constitutional obligation to provide that treatment. *Id.* at 54-55. This made the physician's conduct "fairly attributable to the State." *Id.* at 54. There are other ways a person can become a state actor for the purposes of Section 1983. A person becomes a state actor when he or she: 1) acts under the "State's exercise of coercive power"; 2) acts under the State's "significant encouragement"; 3) "has been delegated a public function by the State"; 4) "is willingly engaged in a joint action with the [State]"; or 5) is otherwise "entwined with the [State]." *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 296 (2001).

15

At this stage, while Westry need not prove that Linden was a state actor, the complaint must contain sufficient facts to plausibly suggest she was. But in the complaint, Westry does not allege that the State of Connecticut coerced, encouraged, or otherwise delegated Linden to act as a state actor. He alleges only that Linden was a state contractor. This is insufficient. Receiving compensation from a state or fulfilling a state contract does not alone create state action. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."). Furthermore, unlike in *West*, there is no allegation here that the State delegated Linden a function that only it could perform. In *West*, the private physician had been hired to provide medical care the State itself was constitutionally required to provide. But Westry does not allege that Connecticut was legally obligated to provide a therapist to his daughter or that Linden was otherwise performing an exclusive state function. Nor does he allege that the State had the authority to review or approve Linden's treatment. Finally, though Westry appears to allege that Linden worked jointly with the State Defendants in their alleged campaign to harm him, *see, e.g.*, ECF No. 87 at (B)(12) ("Kerry Linden extended the harassment and damages given license to her by the remaining defendants' harmful action . . . ."), "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Country of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Because Westry has failed to state a Section 1983 claim against Linden, I GRANT Linden's motion to dismiss.[8] Linden's motion for summary judgment, ECF No. 147, is DENIED as moot.

---

[8] To the extent that Westry seeks to sue Linden under an implied cause of action found in HIPAA, no such cause of action exists. *Meadows v. United Services, Inc.*, 963 F.3d 240, 244 (2d Cir. 2020) ("HIPAA confers no private cause of action, express or implied.").

*Charlotte Shea and Zoey Stout*

The non-conclusory allegations against Shea and Stout are limited to their involvement with Westry's placement on the Child Abuse and Neglect Registry.[9] ECF No. 87 at (B)(1)(a). In the DCF Employees' motion to dismiss, they argue that Westry's claims, including claims related to the registry, are barred by the applicable statute of limitations.  ECF No. 90-1 at 7. I agree with the DCF Employees as to the registry claims.[10]

While defendants typically plead the statute of limitations as an affirmative defense, "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a [12(b)(6)] motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). ". . . 42 U.S.C. §1983, like many federal civil rights statutes, [does] not contain a specific statute of limitations." *Chisholm v. United of Ohama Life Ins. Co.*, 514 F. Supp. 2d 318, 324 (D. Conn. 2007). When a federal law lacks a statute of limitations, courts should "adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). The Second Circuit has held that Connecticut General Statute §52-577 is the applicable "local time limitation" in this district. *Williams v. Walsh*, 558 F.2d 667, 670 (2d Cir. 1977). That statute says, "No action founded upon a tort shall be brought but within *three years* from the date of the act or omission complained of." CONN. GEN. STAT. § 52-577 (emphasis added).

---

[9] The complaint reads, "Upon dismissal of criminal charges—with no evidence—Maureen Duggan, Charlotte Shea, and Zoe Stout ignored their own policy under both 17a-101k-3 of the Regulations of Connecticut State Agencies, Reg. Conn. State Agencies § 17a-101k-8(j) . . . to dispose of the case in accordance with a potential court dismissal." ECF No. 87 at (B)(1)(a). As discussed, the regulations cited by Westry concern the Child Abuse and Neglect Registry. The Court therefore construes the complaint's language to allege that Shea (and others) failed to remove him from the registry, apparently as required by a court order.

[10] Counsel for the DCF Employees argues that other claims "are barred by the applicable three-year statute of limitations," ECF No. 90-1 at 8, but does not say which. Counsel instead argues that the time-barred claims are "evident upon a review of the allegations." It is Counsel's burden to identify those claims and not the Court's burden to find them.

The DCF Employees argue that Section 52-577's three-year limitation applies to the allegations related to the Child Abuse and Neglect registry because "[a]ll of the allegations pertaining to the [registry] occurred more than three years before the initial complaint was filed . . . ." ECF No. 90-1 at 7. But it is not enough that the allegations, in fact, occurred more than three years prior. The dates in the complaint must show that they did. "[W]here . . . a complaint does not demonstrate facial infirmity with respect to the statute of limitations, a motion to dismiss on this ground must fail." *Navarro v. Allied World Surplus Lines Ins. Co.*, 544 F. Supp. 3d 229, 240 (D. Conn. 2021).

In the complaint, Westry alleges that his name "remain[ed] on the registry for nearly half a year since 9 OCTOBER 2018 (placed 2 years prior) . . . ." ECF No. 87 at (B)(1)(a) (emphasis in original). I therefore accept as true that Westry was wrongfully placed on the registry until April 9, 2019—six months after October 9, 2018. Under Section 52-577, Westry had until April 9, 2022 to bring suit. Westry filed his first complaint on May 20, 2022, well over a month after the statute of limitations had expired. Moreover, Westry does not allege any facts that would warrant the application of equitable tolling, and I do not find that the statute of limitations should be tolled. Equitable tolling applies only in "rare and exceptional circumstances where [the Court finds] that extraordinary circumstances prevented a party from timely performing a required act . . . ." *Walker v. Jastremski*, 430 F.3d 560, 565 (2d Cir. 2005) (internal quotations omitted). The complaint does not allege that Westry was prevented from bringing his registry-related claims in a timely manner. The facts he pleads suggest the opposite, as they show that he was aware of the listing of his name on the registry and that he invoked administrative and judicial remedies to contest the listing under the state regulatory scheme. Furthermore, Westry's eight other cases in this district make clear that

he is not shy about filing suit.[11]   Accordingly, all claims related to Westry's placement on the registry are DISMISSED with prejudice.

*Maureen Duggan, Erin Mahoney, Jill Kenworthy, Bryonna Geiste, and Jessica Perry*

The remaining claims against Duggan, Mahoney, Kenworthy, Geiste, and Perry fall into four categories: 1) claims related to reputational and professional harm; 2) claims related to deprivation of child custody; 3) claims related to harm his daughter suffered; and 4) claims brought under the First Amendment.

    a.   Claims Related to Reputational Harm

Westry alleges that Perry, Mahoney, and Kenworthy falsely characterized Westry as a danger to children. He further alleges that Perry "fraudulently claimed [his] daughter was in [im]minent danger." He also alleges that he has been barred from employment, including from "international employers who require background checks." I construe these allegations, including the allegations related to professional harm, as related to Westry's allegedly wrongful placement on the Child Abuse and Neglect Registry. Any claims arising from these allegations are likewise time-barred. Although state law determines the statute of limitations for a Section 1983 claim, federal law governs *when* the statute of limitations begins to run. *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980). In the Second Circuit, "the crucial time for accrual purposes is when the plaintiff *becomes aware* that he is suffering from a wrong . . . ." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980) (emphasis added). Westry's complaint supports a reasonable inference that Westry was aware of potential employment harm well before his name

---

[11] *Westry v. Connecticut et al*, No. 3:25-cv-00704-MPS (D. Conn. Apr. 29, 2025); *Westry v. Meriden Public Schools et al*, No. 3:22-cv-00794-MPS (D. Conn. June 21, 2022); *Westry v. Waterbury et al*, No. 3:22-cv-00686-MPS (D. Conn. May 20, 2022); *Westry v. Leon*, 3:17-cv-00862 (D. Conn. May 23, 2017); *Westry v. Stamford Board of Education*, No. 3:17-cv-00640-SRU (D. Conn. Apr. 17, 2017); *Westry v. New Haven Board of Education*, No. 3:15-cv-01800-JAM (D. Conn. Dec. 7, 2015); *Westry v. Stamford Public Schools*, No. 3:06-cv-00022-CFD (D. Conn. Jan. 5, 2006); *Westry v. Waterbury Public Schools*, No. 3:05-cv-01882-VLB (D. Conn. Dec. 8, 2005).

was removed from the registry on April 9, 2019. The complaint describes an October 9, 2018 courtroom proceeding, "in the presence of [Westry's] defense counsel," during which a state court judge ordered Westry's name removed from the registry. ECF No. 87 at (B)(1)(a). During this proceeding, Westry alleges that the Judge remarked that prospective employers had viewed Westry's name on the registry. *Id.* ("Judge Shortall stated there were other prospective employers that have been given this destructive information on the plaintiff's livelihood and reputation . . . ."). It is therefore reasonable to infer that Westry became aware of an alleged professional injury, at the latest, on October 9, 2018. Westry had until October 9, 2021 to bring such claims—well before the May 20, 2022 filing of his complaint. Furthermore, Westry does not allege that a prospective employer turned him down *after* his name was removed from the registry. For these reasons, I DISMISS with prejudice any claims related to professional harm suffered by Westry due to his alleged wrongful placement on the registry.

But not all of the allegations related to reputational harm create an inescapable inference that they pertain to Westry's placement on the registry. Westry alleges that Perry, Mahoney, and Kenworthy published a claim that Westry has a criminal record. And he alleges that Perry "attempted to coerce judicial employees to falsely claim [he] was insane." Westry does not allege a timeframe for this conduct. As previously discussed, dismissal "is appropriate only if the complaint clearly shows the claim is out of time." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (internal quotations omitted). I assume that this conduct occurred less than three years from the date Westry filed suit. But any claims related to these allegations still fail. As to the allegation concerning the publication of a claim that Westry has a criminal record, as noted, he does not allege that the claim was false, which means that this conduct did not violate his

constitutional rights. And Westry pleads no additional facts sufficient to satisfy the plausibility pleading standard.

As to Perry's alleged attempt to coerce judicial employees to claim that Westry is insane, the Court construes the allegation as another stigma-plus claim. But again, Westry has failed to allege the elements to state such a claim. *See Vega*, 596 F.3d at 81 ("To establish a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.") (internal quotations omitted). Westry does not allege that the utterance that he is insane was ever made. Instead, Westry thrice alleges that Perry *tried* or *attempted* to cajole others into making the utterance. ECF No. 87 at (B)(1)(d) ("She then tries to corrupt judicial employees . . . to lie saying this plaintiff is insane."); *id.* ("She attempted to corruptly coerce judicial employees into signing and saying the plaintiff was insane."); *id.* at B(1)(l) ("Jessica Perry, of her own accord, attempted to coerce judicial employees to falsely claim plaintiff was insane . . . ."). Furthermore, it is not at all clear—nor would it be reasonable to infer—that any such claim caused him professional harm. It's a reasonable inference that Westry's placement on the registry would cause him material harm in the way of diminished job prospects, because potential employers would have access to the registry if they conducted a background check on Westry. But it is not reasonable to infer that prospective employers would become aware of an assertion—presumably made in some administrative or judicial proceeding—that Westry was insane. Because Westry has failed to allege the elements of a stigma-plus claim, that claim is DISMISSED with prejudice.

b.  Claims Related to Custody

Westry alleges that Duggan, Mahoney, and Kenworthy and Perry "caused [him] emotional distress for 64 days loss of custody in 2021." [12] *Id.* at (B)(1)(e). He further alleges that Perry undermined his court-ordered parenting time, *id.* at (B)(1)(c), and that she and Geiste directed his ex-wife to "illegally" seek sole custody of their child. *Id*. The Court construes these facts as alleging a violation of Westry's Fourteenth Amendment procedural and substantive due process rights. Because "[t]he interest of natural parents in the care, custody, and management of their child is a fundamental liberty interest protected by the Fourteenth Amendment," procedural due process demands that the State, if it is to deprive Westry of custody, must provide constitutionally-adequate process. *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (internal quotations omitted). Furthermore, Westry's right to substantive due process requires that, irrespective of how much process is provided to Westry in depriving him of custody, the State refrain from engaging in conduct that is shocking, arbitrary, and egregious. *Id.*

To state a claim for a procedural due process violation, Westry must allege that he was either not provided adequate notice of his loss of custody or an opportunity to present objections to his loss of custody. *See Weinstein v. Albright*, 261 F.3d 127, 134 (2d Cir. 2001) ("At a minimum, [procedural] due process requires that the government provide notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (internal quotations omitted). Westry's complaint contains no such allegations. He has not alleged that there wasn't a court proceeding related to the loss of custody or that he did not receive notice of such a proceeding. Nor does he allege that he was not provided with the opportunity to be heard. To the contrary, Westry's complaint contains

---

[12] He also alleges that Duggan was complicit in depriving him of custody of his daughter between 2016 and 2017, ECF No. 87 at (B)(1)(e), but that conduct squarely falls outside the statute of limitations previously discussed.

numerous references to administrative and judicial proceedings, *see, e.g.*, ECF 87 at (B)(1)(h) ("Upon return to the original and correct jurisdiction, Hon. Eric D. Coleman ordered[ ] my custody restored 21 SEPTEMBER 2021.") (emphasis in original); *id.* ("Ultimately Judge Auden Grogens and HON. Barbara Aarons rejected DCF's deception . . . ."), as well as to evidence he submitted during those proceedings. *Id.* at (B)(1)(d) (". . . DCF received evidence of my child's 2019 bloody assault by her mother in 2020 and 2019 . . . aforementioned evidence and additional video evidence provided to the court."). His complaint, therefore, fails to state a claim that his procedural due process rights were violated. Such claims are DISMISSED with prejudice.

"To state a claim for a violation of [the] substantive due process right of custody, a plaintiff must demonstrate that the state action depriving him of custody was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Cox*, 654 F.3d at 275 (internal quotations omitted). This is a high bar that Westry does not clear. The complaint states that Westry currently has custody over his daughter. ECF No. 87 at (B)(19)(b). Thus, if Westry was deprived of custody, any such deprivation was nonetheless temporary. But "[a]bsent truly extraordinary circumstances, a brief deprivation of custody is insufficient to state a substantive due process claim. *Id*. That is because "such temporary deprivations do not result in the parents' wholesale relinquishment of their right to rear their child." *Id.* (internal quotations omitted). Even if the deprivation lasted several months or years, the complaint fails to plead facts that plausibly suggest that DCF's involvement in the custody dispute was "shocking, arbitrary, and egregious." DCF makes custody recommendations. It is one of the agency's core functions. Without a doubt, those recommendations weigh heavily on both parent and child, but they are nonetheless routinely made and are not the kind of conscience-shocking or

outrageous government conduct the Fourteenth Amendment protects against. For these reasons, I DISMISS with prejudice Westry's substantive due process claims related to custody.

    c.   Claims Related to Harm His Daughter Suffered

Westry makes several allegations that Jessica Perry and Bryonna Geiste failed to act upon evidence that his daughter was being harmed. He alleges that Perry ignored reports of his daughter being assaulted by the mother and that both Perry and Geiste ignored reports that his daughter was being harmed by a dog in the mother's home. He further alleges that Geiste caused direct harm to his daughter as a participant "in renaming [his] daughter [and] deleting her LEGAL AFRICAN NAME . . . ." *Id.* at B(1)(m) (emphasis in original). To the extent that Westry seeks to vindicate violations of his daughter's constitutional rights, he lacks standing to do so. "It is [] a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child." *Tindall v. Poultney High School Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). That is because "it is not in the interests of minors . . . that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Accordingly, the Court DISMISSES these claims.

    d.   The First Amendment Claims

The Court construes Westry's complaint as alleging that the renaming of his daughter not only violated his daughter's constitutional rights but his as well. Specifically, Westry alleges that renaming his daughter was a First Amendment violation. ECF No. 87 at (B)(2). The First Amendment protects not only speech, but also "expressive conduct." *Virginia v. Black*, 538 U.S. 343, 358 (2003). Though there doesn't appear to be much (or any) case law on this point, the

naming of one's child can be expressive. Westry alleges that he seeks to express his daughter's African heritage through her name.

The standard for successfully pleading a free speech violation is straightforward. Westry must plausibly allege that his speech or expressive conduct was "abridged" by a state actor. *National Rifle Association of America v. Vullo*, 602 U.S. 175, 187 (2024) ("The [Free Speech] Clause prohibits government entities and actors from abridging the freedom of speech.") (internal quotations omitted). If Westry seeks to argue that the exercise of his parental authority in naming his child is expressive, he maintains that freedom of expression only insofar as he maintains his parental authority. To the extent Westry is claiming that, when his daughter was in the sole custody of his ex-wife or DCF, the changing of her name violated his First Amendment rights, he is mistaken. Without custody, Westry had no right to designate his daughter's legal name as a form of expressive conduct. *See, e.g.*, *Porter v. Porter*, No. LLIFA155007711S, 2020 WL 13907926, at *16 (Conn. Super. Ct. June 23, 2020) ("A parent with sole custody gets to make all significant decisions for his or her child.") On the other hand, if I were to construe Westry's claim more broadly—that he should have the freedom to call his daughter by whatever name he chooses— Westry does not allege that he has been prevented from doing so.  He alleges no facts suggesting that the Defendants have in some way prevented him from calling his daughter by her African name. Nor does he allege that the Defendants have otherwise inhibited his expression of his own African cultural heritage. And without such abridgment, his First Amendment right has not been violated. For these reasons, Westry has failed to state a First Amendment freedom-of-expression claim.

Westry also alleges that a 2016 discrimination complaint he filed (presumably against DCF) prompted Duggan to pursue a vendetta against him. ECF No. 87 at (B)(1)(b). The Court

construes this allegation as asserting a claim for First Amendment retaliation. In order to state a First Amendment retaliation claim, Westry must plausibly allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curly v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) As to the first element, the Parties do not dispute, and I agree, that Westry has a First Amendment right to criticize state officials, including lodging a discrimination complaint against a state agency or its employees. Nevertheless, Westry fails to plausibly allege the second element.

In the context of a First Amendment retaliation claim, "[c]ausation can be established either indirectly by means of circumstantial evidence . . . or directly by evidence of retaliatory animus." *Raymond v. City of New York*, 317 F. Supp. 3d 746, 773 (S.D.N.Y. 2018) (internal quotations omitted). But Westry's complaint contains no facts demonstrating either explicit animus or "that the protected activity was close in time to the adverse action." *Id.* (internal quotations omitted). "[G]enerally, temporal proximity is strong circumstantial evidence of improper intent." *Id.* According to the dates provided in the complaint, the majority of Duggan's conduct occurred between 2019-2021, with some conduct alleged to have occurred as early as 2018. The Second Circuit has not drawn a bright line defining when the temporal connection between the protected conduct and the state action becomes too attenuated, however, "courts in [the Second] Circuit have consistently held that a passage of more than two months between the protected activity and the adverse [ ] action does not allow for an inference of causation." *Frisenda v. Incorporated Village of Malverne*, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011). "Indeed, it is the rare case that finds a plausible claim when nearly a year rather than months have gone by." *Birch v. City of New York*, 184 F. Supp. 3d 21, 32 (E.D.N.Y. 2016). Here, at least three years passed between the 2016

complaint and Duggan's 2019-21 conduct. The only allegations of more recent conduct are conclusory. For example, Westry alleges that Duggan was "complicit" in a 632-day separation from his child from 2016-2017, ECF No. 87 at (B)(1)(e), but he has failed to plead facts that indicate what if any acts she took during that time or what she did to be "complicit." Without such facts, the allegation remains a threadbare legal conclusion.

Furthermore, Westry has had multiple opportunities to amend his complaint, and he was put on notice as to the weaknesses of his retaliation claim. After reviewing Westry's original complaint, U.S. Magistrate Judge Robert A. Richardson addressed this very allegation. ECF No. 9 at 31. Judge Richardson recommended dismissing the retaliation claim without prejudice so that Westry could refile his complaint "with enough facts" to allow the Court to draw the inference that retaliation occurred. *Id.* at 33. Westry was subsequently permitted to amend his complaint three times. And yet, more than three years after his initial complaint was filed, his retaliation claim remains insufficiently pled.

Because Westry has failed to allege facts that plausibly demonstrate causation, I need not evaluate whether the complaint provides enough facts to suggest that Westry's First Amendment rights were chilled. Westry has failed to state a First Amendment retaliation claim. I therefore DISMISS with prejudice any such claims against Duggan.

## IV.    CONCLUSION

The federal claims against the Defendants are DISMISSED with prejudice.[13] "With respect to the remaining state-law claims, it is firmly settled that when all bases for federal jurisdiction have been eliminated from a case so that only pendant state claims remain, the federal court should

---

[13] This includes claims that Westry's Fourth, Fifth, and Eighth Amendment rights were violated. Westry has not alleged a search or seizure under the Fourth Amendment, nor is Westry a prisoner entitled to the protections of the Eighth Amendment. And the Fifth Amendment's Due Process and Equal Protection Clauses apply to the federal government, not state actors.

ordinarily dismiss the state claims." *Baylis v. Marriot Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) (internal quotations omitted). I therefore decline to exercise supplemental jurisdiction over these claims and DISMISS them without prejudice. The Defendants' motions to dismiss (ECF Nos. 90 and 93) are GRANTED. The Defendants' motion to compel (ECF No. 138) and motion for summary judgment (ECF No. 147), as well as Westry's motion for judgment (ECF No. 156), are DENIED as moot.

IT IS SO ORDERED.

    /s/    
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
   August 7, 2025